IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                  Plaintiff,<br><br>vs.<br><br>DAVID M. WOLFSON et al.,<br><br>                  Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No.  2:03CV914 DAK |

       This matter is before the court on (1) the Securities and Exchange Commission's Motion for Summary Judgment as to Jon R. Marple and Grateful Internet Associates, LLC (the "Marple Defendants"); (2) the Marple Defendants' Motion for Summary Judgment; (3) the Marple Defendants' Motion for Judgment on the Pleadings or Alternatively, Motion to Dismiss for Failure to State a Claim to Dismiss; and (4) Defendants' "Objection" to SEC's Summary Judgment Evidence.  A hearing on the motions was held on October 5, 2005.  At the hearing, the Marple Defendants were represented by Richard Weed and the Commission was represented by Karen L. Martinez.  Before the hearing, the court considered carefully the memoranda and other materials submitted by the parties.  Since taking the matter under advisement, the court has further considered the law and facts relating to the motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## I.  BACKGROUND

Plaintiff SEC and Defendants Jon R. Marple ("J.R. Marple") and Grateful Internet (collectively referred to as the "Marple Defendants") have stipulated to many of the essential facts in this case, and the court has relied on those stipulated facts.  In addition, the Commission has set forth additional undisputed facts upon which the court has relied.  While the Marple Defendants purportedly dispute several of these facts, the court finds that as to the *material* facts, there is no genuine dispute.[1]

To summarize the material facts, J.R. Marple was a consultant to a company, F10 Oil and Gas Properties, that facilitated a scheme to defraud investors of more than $17 million.  J.R. Marple received, directly to himself and through his entity Grateful Internet, LLC, a finder's fee from F-10 for introducing F-10's management to the architect of the fraudulent scheme.  However, the parties that he "introduced" had previously known each other in a business context.  Additionally, J.R. Marple prepared public filings for F-10 that contained material omissions and misrepresentations regarding, among other things, that nature of F-10's involvement in the fraudulent scheme.[2]  J.R. Marple  had prior experience preparing SEC filings

---

[1] The Marple Defendants have filed an "Objection" to the evidence relied upon by the SEC in its Memorandum in Support of Motion for Summary Judgment.  Because the SEC has provided authenticated copies of all documents (which arguably was unnecessary) and for the reasons set forth by the SEC in its Memorandum in Opposition to the Objection, the court finds no merit to the Marple Defendants' objections.

[2] The undisputed facts demonstrate that J.R. Marple was more than a consultant hired to assist in the drafting of the public filings.  He actively managed F-10.  His father and stepmother were F10's CEO and CFO, respectively.  When his father, Jon H. Marple, suffered a major heart attack, J.R. Marple stepped into his father's shoes to help negotiate with note holders to either settle or restructure their ventures with F-10.  He also regularly interfaced with F-10's auditors.

and knew that the public and investors relied on them.

## II.  DISCUSSION

Section 17(a) of the Securities Act makes it unlawful

> For any person in the offer or sale of any securities . . . by the use of any means or instruments of . . . communication in interstate commerce or by the use of the mails . . . (1) to employ any device, scheme or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (3) to engage in any transaction, practice or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a).

The elements for a Section 10(b) violation are similar.  To prove a violation of Section 10(b) and Rule 10b-5 thereunder the SEC must prove four basic elements: (1) a fraudulent act, (2) in connection with the purchase or sale of securities, (3) perpetrated by jurisdictional means such as the mails or telephone lines, and (4) that is done with the specified mental state.  *Geman v. SEC*, 334 F.3d 1183, 1192 (10th Cir. 2003).

The SEC argues that the public filings prepared by J.R. Marple contained material omissions and misrepresentations and that the undisputed facts establish that J.R. Marple and Grateful Internet knowingly committed fraud in connection with the offer, purchase, or sale of F-10 Stock.  While the SEC has withdrawn its Fourth Cause of Action for manipulation of the stock price, it claims that it is entitled to summary judgment on its First, Second, and Third Causes of Action against J.R. Marple and Grateful Internet (for violations of Section 17(a) of the

---

During these interactions, J.R. Marple discussed intimate details of F-10 transactions and discussed with the auditors his progress in drafting F-10's public filings.

Securities Act and 10(b) of the Exchange Act.

The court finds that the undisputed facts establish that J.R. Marple and Grateful Internet knowingly committed fraud in connection with the offer, purchase, or sale of F-10 stock. J.R. Marple prepared the initial draft of F-10's form 10-QSB for the quarter ending December 31, 2002 and F-10's Form 10-KSB for the year ended March 31, 2003. Both of these filings contained untrue statements or omitted material facts with regard to F-10's agreements with Sukumo, the Wolfson entities, and J.R. Marple. The court also finds that the misrepresentations were "so obviously important to the investor that reasonable minds cannot differ on the question of materiality." *SEC v. Research Automation Corp.,* 585 F.2d 31, 25 (2nd Cir 1978). In addition, the misrepresentations and/or omissions were made "in connection with" the purchase or sale of securities. There is no question that the jurisdictional means requirements of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder are satisfied in this case. The court finds no merit in Defendants' arguments that any omissions or misrepresentations made by J.R. Marple are attributable to F-10 and that therefore the Marple Defendants had no duty to speak and could not have acted with the requisite scienter. [3]

---

[3] Contrary to the Marple Defendants' contention, primary liability is not limited to officers and directors. Rather, any person or entity may be liable as a primary violator under 10(b), assuming all of the requirements of primary liability are met. *See Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1227 (10th Cir. 1996) and *Central Bank v. First Interstate Bank*, 511 U.S. 164 (1994). The Tenth Circuit has set forth a "Bright Line" test, stating that a secondary actor such as a lawyer, accountant or similar person retained to prepare public filings *will acquire a duty to speak truthfully* if they "themselves make a false or misleading statement (or omission) that they know or should know will reach potential investors." *Anixter*, 77 F.3d at 1226; *see also SEC v. Lucent Tech., Inc.*, 363 F. Supp. 708, 723 (D.N.J. 2005) (discussing *Anixter*, 77 F.3d at 1226) ("The Tenth Circuit has also adopted the "bright line" test but it does not require attribution.").

Finally, the court finds that the Commission has demonstrated by a preponderance of the evidence that Defendants acted with the requisite scienter. In this circuit, scienter may be established by showing knowing misconduct or recklessness. *Hackbard v. Holmes*, 675 F.2d 1114, 1117 (10th Cir. 1982). Recklessness in securities fraud cases is defined as "an extreme departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Id. at 1118. J.R. Marple's scienter can also be imputed to entities he controlled, such as Grateful Internet. *Knox v. First Security Bank of Utah, N.A.*, 206 F.2d 823, 826 (10th Cir. 1953).

The undisputed facts demonstrate that J.R. Marple knowingly or recklessly violated the anti-fraud provisions of the federal securities laws and that he deceived, manipulated and defrauded investors. He was knowledgeable regarding SEC filings, as he had prior experience preparing filings with the SEC and knew that the public and investors relied on the accuracy of SEC filings. Despite his knowledge, however, he failed to include material facts in F-10's filings that he prepared, even after discussing the information with others. He knew about F-10's Offshore Agreement with Sukumo, the Finder's Fee Agreement with the Wolfson entities, and his own Consulting Agreement, but included untrue statements or omitted material information about these agreements from F-10's SEC filings he prepared.

In sum, the court finds that J.R. Marple and Grateful Internet violated Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

The Marple Defendants' conduct provides ample basis for the entry of a permanent injunction, enjoining J.R. Marple and Grateful Internet from future violations of Section 17(a) of

5

the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, pursuant to Section 20(b) of the Securities Act and Section 21(d)(1) of the Exchange Act. The court finds that future violations of the federal securities laws are likely to occur. In making this determination, the SEC has demonstrated that J.R. Marple acted with a high degree of scienter. He also continues to perform consulting work for public companies, including GFY Foods (formerly F10). In addition, J.R. Marple continues to assert that he played no role in the fraud and has offered no assurances that he will not violate the securities laws in the future. Because Grateful Internet is the entity through which J.R. Marple perpetrated this fraud, because it received funds directly traceable to Sukumo's fraudulent sales, and because J.R. Marple's scienter may be imputed to Grateful Internet, it is also enjoined from future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

The court also orders J.R. Marple and Grateful Internet to disgorge their ill-gotten gains. The Commission has demonstrated that J.R. Marple, either individually or through Grateful Internet, received $144,587 for consulting services, including consulting work and the finder's fee. He also received approximately $4,900 for his personal sale of F10 stock, totaling $149,530.45. The court also awards prejudgment interest, which, as of October 5, 2005, was $21,463.27.

The Commission seeks a civil monetary penalty against J.R. Marple and Grateful Internet pursuant to Section 20(d)(1) of the Securities Act and Section 21(d)(3) of the Exchange Act. Third-tier civil monetary penalties–which allow a $120,000 fine for each violation for natural persons and a $600,000 find for each violation for any other person–are appropriate where the

violation (1) involved "fraud, deceit, manipulation, or deliberate or reckless disregard of regulatory requirements;" and (2) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)©), 78u(d)(3)(B)(iii); 17 C.F.R. § 201.1002 (2001). The court finds that a penalty of $100,000 is appropriate in this case.

Finally, the court, after considering the factors set forth in *SEC v. Steadman*, 603 F.2d 1126, 1140 (5th Cir. 1979), the court agrees that a permanent bar prohibiting J.R. Marple from participating in any penny stock offering.

### III.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that (1) the Commission's Motion for Summary Judgment [docket # 457] is GRANTED; (2) the Marple Defendants' Motion for Summary Judgment [docket # 465] is DENIED; (3) the Marple Defendants' Motion for Judgment on the Pleadings or Alternatively, Motion to Dismiss for Failure to State a Claim to Dismiss [docket # 519] is MOOT; and (4) Defendants' "Objection" to SEC's Summary Judgment Evidence is DENIED.

As set forth above, J.R. Marple and Grateful Internet, LLC are ENJOINED from future violations of the antifraud provisions of the federal securities laws. They are HEREBY ORDERED to disgorge all ill-gotten gains, including $144,587 paid to J.R. Marple for consulting services and finders fees and $4,900 from the personal sale of F-10 stock, and $21,463.27 in prejudgment interest on the ill-gotten gains, for a total of $170,950.27. In addition, the court imposes a civil penalty against the Marple Defendants in the amount of

$100,000 and enjoins them from participating in any offering of penny stock.

DATED this 28th day of November, 2005.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge